# Washington Tin Plate Co. *v.* Ohio Iron & Metal Co., Appellant.

*Contracts—Written contracts—Agreement for output of factory —Change of agreement—Fulfillment of contract—Case for jury.*

In an action of assumpsit to recover the price of certain quantities of tin scrap ends, shipped in accordance with the terms of a written contract, the case is for the jury and a verdict for the plaintiff will be sustained, where evidence is produced to prove the substantial alteration of the terms of the contract and the fulfillment thereof, in accordance with the altered terms. In such case, the conflicting testimony relative to the amount of scrap ends included in the contract necessarily raised a question of fact which had to be submitted to the jury, and a judgment for the plaintiff will be affirmed.

Argued April 25, 1921. Appeal, No. 126, April T., 1921, by defendant, from judgment of C. P. Allegheny Co., Oct. T., 1917, No. 1805, on verdict for plaintiff in the case of Washington Tin Plate Company, a corporation organized and existing under the laws of the State of Pennsylvania, *v.* Ohio Iron & Metal Company, a corporation organized and existing under the laws of the State of Illinois, and United Engineering & Foundry Company, Garnishee. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Assumpsit for breach of contract. Before SWEARINGEN, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $1,319.40 and judgment thereon. Defendant appealed.

*Errors assigned* were the charge of the court, answers to points and refusal to grant a new trial.

*Edmund K. Trent,* of *Prichard & Trent,* for appellant.

*George D. Wick,* and with him *Robert J. Dodds* and *Reed, Smith, Shaw & Beal,* for appellee.

OPINION BY HEAD, J., July 14, 1921:

In the manufacture of tin plate as conducted by the plaintiff company there was produced a quantity of scrap metal designated in the language of the contract and the witnesses as "standard sheet bar crop ends." The defendant company was a dealer in material of that kind, buying from the manufacturing producers and selling to those who had use for it in the prosecution of their business. About the middle of December, 1916, negotiations were entered into between the managing officers of these two corporations for the sale by the one and the purchase by the other of the output of the plaintiff's mill of these crop ends for the six months beginning January 1, 1917, and ending on June the 30th of that year. The contract, as prepared in duplicate by the defendant and executed by both parties, was written upon a blank form prepared for that purpose. Under the subhead of that form, marked "Quantity," were these words, "Your output of standard sheet bar crop ends." Under the heading "Shipment," "over first half of next year estimated at about 50 tons a month or 300 tons in all, in clean gondola cars, as accumulated by you in carloads." This contract was dated December 19, 1916. It contained an identification mark as follows: "Contract No. 17228-P." Were the question before us confined to a determination of the respective obligations of the parties under the contract, as written, our task would not be a difficult one.

It clearly appears that plaintiff company, on December 30, 1916, delivered to the Baltimore & Ohio Railroad Company a carload of crop ends consigned to the defendant at Parkersburg, West Virginia. The invoice for this carload was dated January 1, 1917, and contained the

usual items to identify the car by number, the weight of the contents, etc., and distinctly stated it was consigned on "buyer's order 17228-P." It was duly received by the consignee, to whom, according to defendant's direction, it was forwarded. Now it is apparent that a carload of this material, loaded and delivered to the railroad company on December 30, 1916, could not have been any portion of the output of the plaintiff's mill during a period beginning only on January 1, 1917. What brought about that shipment? The plaintiff's president testified on the trial that on the afternoon of December 29th the manager of the defendant company telephoned to him that the Parkersburg Iron & Steel Company were badly in need of crop ends for immediate shipment. Further, that they, the defendant, owed the company named some material for the last half of 1916 to complete their contract and he desired to know if we could ship a car to help them complete that contract. I replied I had some crop ends and "by applying that on their crop end contract, I could get them a carload out by the end of the month. He told me to go ahead and do it." If that testimony truly stated the facts, then the parties had modified the terms of the written contract in such a way that the plaintiff would be entitled to a credit for the amount of the carload thus shipped as against the entire output of their mill for the period of the coming six months. The defendant's manager flatly denied that any such arrangement had been made and testified that the telephone conversation related only to shipping instructions for the first delivery under the terms of the contract.

We are of opinion this conflicting testimony necessarily raised an important and material question of fact which the court was obliged to submit to the jury. We have carefully read the entire charge delivered by the trial judge and we are convinced that question was fairly submitted and that when the charge is taken as a whole, as it must be, it left to the defendant no substan-

tial ground of complaint as to the manner of the submission. The jury found in favor of the plaintiff and thus established the fact that the carload of crop ends that went forward to the defendant on the first of January, 1917, was to be regarded as a discharge pro tanto of its obligation to deliver under the terms of the contract as written. This was really the crux of the case because the testimony plainly showed that the plaintiff had continued deliveries steadily along during the contract period up until June 5, 1917. With its shipment of that date, its total shipments to the defendant aggregated substantially more than the 300 tons estimated in the contract to be the probable amount of the output for the period named, and there was evidence from which the jury could find that the total shipments exceeded the actual output of the plaintiff's mill during the contract period. All of these shipments were received by the defendant and all of them were paid for according to the contract except the last shipment of June 5, 1917. It appears that by that time the price of the material contracted for had about doubled since the execution of the contract. The defendant demanded the remainder of the output of the plaintiff's mill that might be accumulated after June the 5th until June the 30th. The plaintiff declined to ship more on the ground that it had completely performed the contract it had entered into and that the defendant had received all of the material contracted for and more.

If there had been no modification of the contract, the court told the jury the defendant would be entitled to receive something more from the plaintiff and to recover such damages as it had shown because of the plaintiff's failure to deliver. If, on the other hand, they found that the contract had been modified, as claimed by the plaintiff, then the latter had fairly performed its contract and was entitled to recover the value of the shipment of June the 5th at the contract price. As already

stated, the jury found for the plaintiff and rendered a verdict accordingly upon which judgment was entered.

The assignments of error complain chiefly because in certain selected excerpts from the charge the trial judge failed to properly construe the contract or gave undue weight to the theory of the plaintiff and the evidence supporting it.  Reading the whole of the charge, as it was delivered, we are convinced these assign'-ments are without substantial merit and they are overruled.  The remaining assignments rest upon the action of the trial judge in sustaining objections to certain lines of proof offered by the defendant.  For instance, an offer to elicit from the plaintiff's president, called for cross-examination, information as to whom the plaintiff company had sold such crop ends as accumulated between June 5th and June 30th of 1917.  As we view it, the evidence sought to be obtained, was wholly irrelevant and could in no way have assisted the jury in determining the real question at issue.  If the plaintiff was under obligation to deliver those crop ends to the defendant and failed to do so, the remedy of the latter was plain.  And so we say that a careful examination of the record discloses no material error on the part of the trial judge in the conduct of the trial and nothing which ought to disturb the verdict rendered by the jury.  All of the assignments are overruled.

Judgment affirmed.